UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **24/7 RESTORATION SPECIALISTS, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO. 22-1948** |
| **ZACHARY YOUNG** | **SECTION: "H"** |

### ORDER AND REASONS

Before the Court is Defendant Zachary Young's Motion for Summary Judgment (Doc. 35). For the following reasons, Defendant's Motion is **GRANTED IN PART**.

### BACKGROUND

This case arises out of an alleged breach of contract. Plaintiff 24/7 Restoration Specialists, LLC claims that Defendant Zachary Young failed to pay for water mitigation services that Plaintiff performed at Defendant's residential property after it was damaged by Hurricane Ida. Plaintiff is a Texas limited liability company that holds no Louisiana contractor's license, mold remediation license, or home improvement license.[1] In September 2021, both parties entered into an agreement to perform what Plaintiff refers to as "water damage mitigation services" ("the Authorization"). Specifically, the Authorization is titled "Authorization for Repairs and Payment" and allows

---

[1] Doc. 35-1. *See also* Doc. 35-2 at 25.

1

2

Plaintiff "to proceed with emergency cleaning and/or restoration services required to restore the above listed property and/or its contents from the damage caused by water damage."[2] Elsewhere in the Authorization, the work is referred to as "remediation," and "cleaning and/or repairs."[3] Plaintiff removed "the vast majority" of ceilings and walls, as well as water-damaged carpet, flooring, drywall, insulation, electrical fixtures, and cabinetry.[4] Plaintiff also used air scrubbers to dry the property.[5]

After the work was finished, on October 26, 2021, Defendant signed a written Certificate of Completion and Satisfaction, providing that "all emergency cleaning and/or restoration services provided by 24/7 Restoration Specialists . . . have been completed to [his] satisfaction."[6] On October 30, 2021, Plaintiff sent Defendant an invoice for $62,108.92, which Defendant disputed. Plaintiff subsequently adjusted the invoice, reflecting a total amount owed of $59,105.44. To date, Defendant has not paid the invoice. Plaintiff filed suit in this Court on June 24, 2022.

Plaintiff brings three causes of action: (1) breach of contract, (2) suit on open account pursuant to Louisiana Revised Statutes § 9:2781 ("open account"), and (3) unjust enrichment. Defendant denies the allegations of the First Amended Complaint and asserts counterclaims for (1) declaratory judgment, (2) fraud, and (3) violations of the Louisiana Unfair Trade Practices Act.[7]

Now before the Court is Defendant's Motion for Summary Judgment. Defendant contends that Plaintiff's claims fail as a matter of law because the

---

[2] Doc. 35-5.
[3] *Id.*
[4] Doc. 35-2 at 8,
[5] *Id.* at 12, 18.
[6] Doc. 36-4.
[7] Doc. 20.

Authorization is an absolute nullity under Louisiana Civil Code Articles 2029 and 2030.[8] Plaintiff opposes.[9]

## **LEGAL STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[10] A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[11]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[12] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[13] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[14] "In response to a properly supported motion for summary judgment, the non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to

---

[8] Louisiana Civil Code Article 2029 provides that "[a] contract is null when the requirements for its formation have not been met." Louisiana Civil Code Article 2030 provides that "[a] contract is absolutely null when it violates a rule of public order, as when the object of a contract is illicit or immoral. A contract that is absolutely null may not be confirmed. Absolute nullity may be invoked by any person or may be declared by the court on its own initiative."
[9] Doc. 36.
[10] FED. R. CIV. P. 56(C) (2012).
[11] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[12] Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528 (5th Cir. 1997).
[13] Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).
[14] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[15] "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[16] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[17]

## LAW AND ANALYSIS

Defendant requests that the Court dismiss Plaintiff's breach of contract, open account, and unjust enrichment claims. Defendant argues that since the Authorization is an absolute nullity, there can be no claims for breach of contract or open account. Defendant also argues that the unjust enrichment claim must be dismissed because Plaintiff cannot carry its burden of proof regarding the cost of materials and labor. Plaintiff opposes, arguing that the Authorization is a valid contract, and thus, all its claims survive summary judgment. The Court will address each claim individually.

### I.   *Breach of Contract*

A claim for breach of contract requires "(1) the obligor's undertaking an obligation to perform, (2) the obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the oblige."[18] "Put differently, the elements of a breach of contract are the existence of an

---

[15] John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).
[16] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).
[17] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).
[18] Favrot v. Favrot, 68 So. 3d 1099, 1109 (La. Ct. App. 4 Cir. 2011) (citing 1436 Jackson Joint Venture v. World Constr. Co., Inc., 499 So. 2d 426, 427 (La. Ct. App. 4 Cir. 1986)).

agreement, a breach of that agreement, and damages resulting from that breach."[19]

Here, the parties dispute whether a valid contract ever existed. Defendant contends that without a Louisiana contractor's license there can be no claim for breach of contract as a matter of law. Plaintiff does not dispute that it holds no Louisiana contractor's license.[20] Defendant is correct that "[u]nder Louisiana law, a contracting agreement entered into without the benefit of a contractor's license is null and void."[21] "[O]nly a person who has obtained a contractor's license from the State Licensing Board for Contractors may be engaged in the contracting vocation in the State of Louisiana."[22]

As such, the ultimate question is whether Plaintiff acted as a contractor in performing "emergency cleaning and/or restoration services." If the services rendered fall under the definition of "contractor," the Authorization must be declared absolutely null. Under Louisiana law

> "Contractor" means any person who undertakes to, attempts to, or submits a price or bid or offers to construct, supervise, superintend, oversee, direct, or in any manner assume charge of the construction, alteration, repair, improvement, movement, demolition, putting up, tearing down, furnishing labor, or furnishing labor together with material or equipment, or installing material or equipment for . . . [a] improvements or repairs where

---

[19] CCAPS, LLC v. HD and Associates, LLC, No. 21-2195, 2023 WL 1965087, (E.D. La. Feb. 13, 2023).
[20] Doc. 36-1.
[21] TradeWinds Env't Restoration, Inc. v. Stewart, No. 06-3299, 2008 WL 236891, at *3 (E.D. La. Jan. 28, 2008), *aff'd sub nom*. Trade-Winds Env't Restoration, Inc. v. Stewart Dev. Liab. Co., 409 F. App'x 805 (5th Cir. 2011). Additionally, a contract that is absolutely null may not be confirmed or otherwise ratified. LA. CIVIL CODE art. 2030.
[22] Hagberg v. John Bailey Contractor, 435 So. 2d 580, 584 (La. Ct. App. 3 Cir. 1983). *See* LA. REV. STAT. § 37:2163(A)(1) (("It shall be unlawful for any person to engage or to continue in this state in the business of contracting, or to act as a contractor as defined in this Chapter, unless he holds an active license as a contractor in accordance with the provisions of this Chapter."). The purpose of these provisions is to protect the State's citizens by ensuring that those acting as contractors are qualified to do so. *Tradewinds Env't Restoration, Inc.*, 2007 WL 1191896, at *3.

5

> the entire cost exceeds seven thousand five hundred dollars to an existing residential structure.[23]

Defendant argues that Plaintiff performed "demolition," "tearing down," and "furnishing labor together with material or equipment" as contemplated by the "contractor" definition to restore property damaged by water.[24] Plaintiff rebuts that the Louisiana State Licensing Board for Contractors does not require a contractor's license for "water mitigation or dewatering services."[25] Plaintiff also states that as the Authorization only provides for "dewatering and mitigation" services, it is a valid and enforceable contract.

The Court finds that the work performed falls under the statutory definition of contractor because Plaintiff removed ceilings, walls, water-damaged carpet, sheetrock, drywall, insulation, and cabinetry. In *CCAPS, LLC v. HD and Associates, LLC*, involving nearly the same scope of work, another section of this Court held that "the water remediation services performed . . . involving . . . the removal of ceiling tiles, flooring, carpeting, baseboards, cabinets, and walls constitute an 'alteration' of [the] property because the buildings were 'made different without changing into something else.'"[26] The court in *CCAPS, LLC,* after lengthy analysis of the statute and the work performed, also held that the work constituted "tearing down."[27] This Court

---

[23] LA. REV. STAT. § 37:2150.1.
[24] Doc. 37-2 at 3.
[25] Doc. 36 at 6.
[26] CCAPS, LLC v. HD and Associates, LLC, No. 21-2195, 2023 WL 1965087, (E.D. La. Feb. 13, 2023) (citing *Alteration*, Merriam-Webster's Ninth New Collegiate Dictionary (9th ed. 1991)).
[27] *Id.* ("'[T]earing down' suggests the removal or elimination of certain aspects of a structure, as was the case here. Because Plaintiff's remediation work involved "taking apart" certain water damaged components of Defendant's properties, the Court finds that the services performed by Plaintiff also fit the "tearing down" language of § 2150.1(4)(a).)

agrees. Like Judge Vitter, this Court holds that under the statutory definition of "contractor," Plaintiff's services constitute "alteration" and "tearing down."[28]

Plaintiff's principal argument in opposition is that "dewatering and water mitigation services" are excepted from the licensure requirement and do not require a contractor's license under Louisiana law.[29] In making this argument, Plaintiff relies upon the Louisiana State Licensing Board for Contractors website, which states that "water extraction, carpet removal, damaged drywall removal do NOT require a license."[30] The website offers no statutory basis for this statement, and the Court is not bound by the frequently asked questions portion of a website.[31]

Plaintiff also attempts to rely on an amendment passed in August 2022, which provides that dewatering or water mitigation "is excluded from the type of work that requires a contractor's license."[32] This provision, however, was passed after the execution of the agreement in this case and does not have any effect on the law at the time Plaintiff performed the work in question.[33] The

---

[28] Plaintiff's services may also fit other term of the definition "contractor," but the Court does not find it necessary to discuss other terms such as "demolition," or "furnishing of labor together with material or equipment," as it is clear that Plaintiff's services fit the definition of "contractor" absent those arguments.

[29] Doc. 36 at 6. The Court notes that the words "dewatering and water mitigation" are not found in the Authorization. Doc. 36-3.

[30] Doc. 36 at 6.

[31] The Court in *CCAPS, LLC v. HD and Associates* similarly held the plaintiff's "reliance on the statement from the 'Frequently Asked Questions' portion of the LSLBC's website to be misplaced and without merit." 2023 WL 1965087, at *9.

[32] LA. REV. STAT. § 37:2157(A)(12). Judge Vitter also addressed this amendment in *CCAPS, LLC,* stating that this change in law is "further support that 'dewatering' services and the types of services performed here by [the plaintiff] were, at the time of Agreement, covered under the definition of 'contractor' and thus, needed a license to perform. To hold otherwise would be to construe the amendment as an entirely superfluous and perfunctory exercise with no real effect." 2023 WL 1965087, at *9.

[33] Plaintiff relies upon *RACM LLC v. Glad Tidings Assembly of God Church of Lake Charles* in support of its argument that the work performed did not require a contractor's license. No. 21-3580, 2022 WL3162186 (W.D. La. Aug. 8, 2022). This Court, however, agrees with the court in *CCAPS,* which stated that "neither the Agreement nor the Complaint in this case use the term 'dewatering' to describe the services performed by Plaintiff, making it factually

Court finds that under Louisiana law, the work performed was that of a contractor. As Plaintiff did not have a contractor's license, the Authorization is in direct violation of Louisiana law and is an absolute nullity. Without a valid contract, Plaintiff's claim for breach of contract must fail.[34]

## II. Open Account

An open account is "any account for which a part or all of the balance is past due."[35] "An open account necessarily involves an underlying agreement between the parties on which the debt is based."[36] To recover on an open account, "the creditor must first prove the account by showing that it was kept in the course of business and by introducing supporting testimony regarding its accuracy."[37] The burden then "shifts to the debtor to prove the inaccuracy of the account or to prove that the debtor is entitled to certain credits."[38] "Since the open account statute imposes attorneys' fee awards as a penalty, it must be strictly construed."[39]

Plaintiff's open account claim alleges that an account was created by the services performed pursuant to the Authorization and that the final invoice sent to Defendant constituted "written demand correctly setting forth the amount owed."[40] The open account claim, however, hinges on the validity of

---

distinguishable" from *RACM, LLC*. 2023 WL 1965087, at *9. The Authorization and the scope of the work performed in this case mirrors that in *CCAPS, LLC,* and the Court agrees that the work performed fits squarely within the definition of "contractor" under Louisiana law.

[34] *Id.* (holding that there could be no breach of contract claim where the plaintiff "removed ceiling tiles, flooring, carpet, baseboards, cabinets, and walls" without a Louisiana contractor's license as the contract was an absolute nullity).

[35] LA. REV. STAT. § 9:2781(D).

[36] Barges Unlimited Inc. v. Morgan City Stevedores, LLC, No. 2022-0691 (La. App. 1 Cir. Feb. 2, 2023).

[37] Bisso & Miller, LLC v. Marsala, 215 So. 3d 469, 472 (La. App. 5 Cir. 2017); *see also* CACV of Colo., LLC v. Spiehler, 11 So. 3d 673, 675 (La. App. 3 Cir. 2009); Newman v. George, 968 So. 2d 220, 224 (La. App. 4 Cir. 2007).

[38] *Bisso & Miller*, 215 So. 3d at 472.

[39] Doc. 11.

[40] Doc. 14 at 6.

the Authorization.[41] Because the Court held that the Authorization was an absolute nullity under Louisiana law, Plaintiff cannot bring a claim for an open account for payment due under the Authorization.[42] Furthermore, "a party can only prevail on an open account claim where 'judgment on the claim is rendered in favor of the claimant.'"[43] As the Court has determined that the Authorization is an absolute nullity, the open account claims fails because judgment shall not be rendered in Plaintiff's favor on the now-dismissed breach of contract claim. Plaintiff's open account claim must also be dismissed.

### III. Unjust Enrichment

Under Louisiana law, "[a] claim for unjust enrichment is based upon the equitable principle that a 'person who has been enriched without cause at the expense of another person is bound to compensate that person.'"[44] To prove unjust enrichment, five elements must be present: (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and resulting impoverishment; (4) an absence of justification or cause for the enrichment and impoverishment; and (5) the lack of another remedy at law.[45] In the case of an absolutely null contract, Louisiana Civil Code article 2033 provides that the "parties must be restored to the situation that existed before the contract was

---

[41] *Tradewinds Env't Restoration, Inc.*, 2007 WL 1191896, at *7 ("analysis of whether an open account existed is unnecessary because the contracts were illegal under Louisiana law").

[42] *CCAPS, LLC*, 2023 WL 1965087, at *9 ("Because the Court, for the above reasons, has determined that the Agreement is an "absolute nullity" void ab initio, it follows that Plaintiff cannot state a claim for an open account regarding payment due under the Agreement. The Agreement is deemed never to have existed."); *Tradewinds Env't Restoration, Inc.*, 2007 WL 1191896, at *7 (holding that the plaintiff "may not maintain a claim on failure to pay an open account as the contracts are null and void.").

[43] *CCAPS, LLC*, 2023 WL 1965087, at *9.

[44] Semco, LLC v. Grand Ltd., 221 So. 3d 1004, 1030 (La. App. 5 Cir. 2017) (quoting La. Civ. Code art. 2298).

[45] *Id.*

made."[46] An unlicensed contractor may only recover "the actual costs of their materials, services, and labor . . . with no allowance for profit or overhead."[47]

Defendant argues that Plaintiff cannot carry its burden of proof showing actual costs of labor, material and equipment. Plaintiff responds that its business model prohibits the type of records Defendant demands.[48] Nevertheless, Plaintiff states that the Xactimate estimation system provides a adequate estimate of the amount that it has been impoverished.[49]

The Court finds that summary judgment is not warranted as to Plaintiff's unjust enrichment claim. Defendant's expert claims that the value of the work performed is $21,746.34.[50] Plaintiff, however, presents the deposition of its owner, Michael McClure, who states that the total direct cost of the work performed is $42,111.03.[51] As there is a material issue of fact, summary judgment must be denied as to Plaintiff's unjust enrichment claim.

## CONCLUSION

Based on the foregoing, Defendant's Motion for Summary Judgment is **GRANTED IN PART.** Plaintiff's claims for breach of contract and suit on an open account are **DISMISSED WITH PREJUDICE.**

---

[46] LA. CIV. CODE art. 2033.
[47] Quaternary Res. Investigations, LLC v. Phillips, 316 So. 3d 448, 459 (La. App. 1 Cir. 2020) (citing Boxwell v. Dep't of Highways, 203 La. 760, 774 (1943)).
[48] Plaintiff states that its business model "is to perform the work and invoice it according to the prevailing local rates for specific line items as reflected in the Xactimate system." Doc. 36 at 11. Plaintiff did not purchase materials specifically for Defendant's home, rather, it purchased supplies and materials in bulk and used those supplies for its projects across Louisiana. *Id.*
[49] Louisiana Civil Code article 2298 provides that the amount of compensation awarded under unjust enrichment "is measured by the extent to which one has been enriched or the other has been impoverished, whichever is less."
[50] Doc. 36-10.
[51] Doc. 36-9.

New Orleans, Louisiana this 5th day of June, 2023.

_____
**JANE TRICHE MILAZZO
UNITED STATES DISTRICT JUDGE**