UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **24/7 RESTORATION SPECIALISTS, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO. 22-1948** |
| **ZACHARY YOUNG** | **SECTION: "H"** |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

Defendant Zachary Young owns property in Luling, Louisiana that was damaged by Hurricane Ida. Plaintiff 24/7 Restoration Specialists, LLC performed water mitigation services at the property following the storm and this case arises out of Young's refusal to pay the invoice. This case proceeded to a bench trial on July 10, 2023. Having considered the evidence admitted at trial, the arguments of counsel, and the pre-trial briefing, this Court makes the following findings of fact and conclusions of law. To the extent a finding of fact constitutes a conclusion of law, and vice versa, the Court adopts it as such.

### FINDINGS OF FACT

1. Plaintiff 24/7 Restoration Specialists, LLC ("24/7") is a Texas limited liability company owned by Michael McClure and David Daniels. 24/7 provides emergency water mitigation and dewatering services to property owners affected by disasters such as hurricanes or floods, and

1

holds no Louisiana contractor's license, mold remediation license, or home improvement license.[1]

2. Defendant Zachary Young is a Louisiana citizen and the owner of the property located at 200 Brooklyn, Luling, Louisiana ("the Property").

3. The Property measured between 870-875 square feet and was used as a rental property.

4. The Property was damaged by wind-driven rain during Hurricane Ida, including rain that entered through the roof and windows.

5. Young contacted 24/7 and asked that it perform water mitigation and dewatering services on the Property.

6. Jon Fagala spoke with Young on behalf of 24/7 and discussed what work Young needed on the Property.

7. Young signed the "Authorization for Repair and Payment" ("the Authorization") on September 24, 2021.

8. The Authorization allows 24/7 "to proceed with emergency cleaning and/or restoration services required to restore the above listed property and/or its contents from the damage caused by water damage."[2]

9. The Authorization does not contain a scope of work, cost, or estimated time of completion.

10. 24/7 removed ceilings, walls, water damaged carpet, sheetrock, drywall, insulation, flooring, and cabinetry. 24/7 also used dehumidifiers and air movers to dry the interior structural members and cleaned the interior structural members by vacuuming and wiping them with a disinfectant.

---

[1] Doc. 35-1. *See also* Doc. 35-2 at 25.
[2] Doc. 35-5.

11. 24/7 did not maintain payroll records, time sheets, invoices, receipts, or records of materials purchased or utilized.
12. 24/7 uses Xactimate, a cost estimating computer program, to determine the Scope of Work and billing after all work is completed.
13. Profit and overhead costs are built into each line item as a function of Xactimate.
14. Young signed a Certificate of Completion and Satisfaction on October 26, 2021, in which he confirmed that the work was complete and performed to his satisfaction.
15. On October 30, 2021, 24/7 presented Young an invoice for $62,108.92 for "Water Damage Mitigation-Hurricane Ida" via email.
16. Young refused to pay the invoice.
17. 24/7 reduced the amount it sought to collect to $59,105.44 on November 19, 2021, after zeroing out line items for bagging materials and personal protective equipment.
18. On April 14, 2023, 24/7 further reduced the amount it sought to collect to $57,511.33 after discovering a duplicative charge. This was the final amount 24/7 sought to collect.
19. To date, Young has paid nothing.
20. Young offered to pay various amounts of money to settle the dispute, however 24/7 refused to accept any sum less than $40,000.
21. 24/7 filed suit in this Court on June 24, 2022, bringing three causes of action: (1) breach of contract, (2) suit on open account pursuant to Louisiana Revised Statutes § 9:2781 ("open account"), and (3) unjust enrichment.

22. Young denied the allegations of the First Amended Complaint and asserts counterclaims for (1) declaratory judgment, (2) fraud, and (3) violations of the Louisiana Unfair Trade Practices Act ("LUTPA").

## CONCLUSIONS OF LAW

1. This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. §1332.
2. Louisiana law governs this matter.[3]

**Breach of Contract**

1. A claim for breach of contract requires "(1) the obligor's undertaking an obligation to perform, (2) the obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the oblige."[4] "Put differently, the elements of a breach of contract are the existence of an agreement, a breach of that agreement, and damages resulting from that breach."[5]
2. "At the outset we note that '[t]he burden of proof in an action for breach of contract is on the party claiming rights under the contract.'"[6]
3. "An obligation is a legal relationship whereby a person, called the obligor, is bound to render a performance in favor of another, called the obligee. Performance may consist of giving, doing, or not doing something."[7] Obligations may arise from contracts and other declarations of will.[8]

---

[3] Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938).
[4] Favrot v. Favrot, 68 So. 3d 1099, 1109 (La. App. 4 Cir. 2011) (citing 1436 Jackson Joint Venture v. World Constr. Co., Inc., 499 So. 2d 426, 427 (La. App. 4 Cir. 1986)).
[5] CCAPS, LLC v. HD and Associates, LLC, No. 21-2195, 2023 WL 1965087, (E.D. La. Feb. 13, 2023).
[6] *Favrot*, 68 So. 3d at 1107.
[7] LA. CIV. CODE art. 1756.
[8] LA. CIV. CODE art. 1757.

4. "Under Louisiana law, a valid contract requires capacity, consent, a lawful cause, and a valid object."[9]

5. Under Louisiana law, "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."[10] "The determination of whether a contract is clear or ambiguous is a question of law."[11]

6. "The Court may consider extrinsic evidence as to the parties' intent only if the contract is ambiguous."[12] "[W]hen the terms of a written contract are susceptible to more than one interpretation, or there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed, parol evidence is admissible to clarify the ambiguity and to show the intention of the parties."[13]

7. The Court finds the Authorization ambiguous, as it does not articulate a defined scope of work, an estimated time of completion, a definite price, or any method of determining price. As such, the Court considered parol evidence to ascertain the intent of the parties.

8. The Court heard testimony regarding the parties' intent and understanding of each party's rights and obligations under the Authorization. 24/7 indicated it would perform dewatering services and testified it was unable to provide any cost estimate to Young prior to beginning work. Young testified he wanted the Property dried out and cleaned, and believed it would cost $15,000-$20,000.

---

[9] CAM Logistics, L.L.C. v. Pratt Indus., Inc., No. 1:20-CV-445, 2022 WL 15448719, at *4 (W.D. La. Oct. 26, 2022).
[10] LA. CIV. CODE art. 2046.
[11] Cadwallader v. Allstate Ins. Co., 848 So. 2d 577, 579 (La. 2003).
[12] Thorne v. Bard Peripheral Vascular, Inc., No. 16-0262, 2016 WL 3746148, at *4 (E.D. La. July 13, 2016) (citing Campbell v. Melton, 817 So. 2d 69, 75 (La. 2002))
[13] Dixie Campers, Inc. v. Vesely Co., 398 So. 2d 1087, 1089 (La. 1981).

9. Based upon the testimony, the Court finds that the Authorization signed by Young is not a valid and enforceable contract due to failure of an object that is lawful, possible, and determined or determinable.[14]

10. According to the Civil Code, "[t]he quantity of a contractual object may be undetermined, provided it is determinable."[15]

11. Courts have held that "it is essential to the formation of a contract that the nature and extent of the obligations therein be certain."[16]

12. The contract created an obligation on behalf of 24/7 to do, to dewater the Property. The obligation of the homeowner, Young, was to give money.

13. The Authorization, however, contained no price term, or any method of determining the price. The Authorization also contained no articulate scope of work, and based on the testimony of Michael McClure, David Daniels, Jon Fagala, and Young, there was no agreement or understanding of the scope of work covered by the Authorization, or any mechanism by which either the price or scope of work could be determined.[17] The nature and extent of the obligations created is uncertain and undeterminable.

14. Thus, the object was unascertainable and necessarily defeats the formation of a contract under Louisiana law.

---

[14] LA. CIV. CODE art. 1971.
[15] *Id.* art. 1973.
[16] Villars v. Edwards, 412 So. 2d 122, 124 (La. App. 1 Cir. 1982), *writ denied*, 415 So. 2d 945 (La. 1982).
[17] B & B Cut Stone Co. v. Resneck, 465 So. 2d 851, 854 (La. App. 2 Cir. 1985) ("[l]ack of a price necessarily defeats a construction contract."); Villars v. Edwards, 412 So. 2d 122, 124 (La. App. 1 Cir. 1982), *writ denied*, 415 So. 2d 945 (La. 1982) ("in the context of home building contracts, the obligation of the contractor is one to do, that is, to build an edifice. The obligation of the homeowner is to give money. Thus, . . . the amount of money which the homeowner will pay for his new construction must be determinate or at least ascertainable in order that a valid construction contract be formed').

15. 24/7 has failed to carry its burden to prove a breach of contract claim, as it has failed to show that the Authorization was a valid contract. The Court finds that there was no breach of contract and 24/7's claim is dismissed.

**Suit on an Open Account**

16. An open account is "any account for which a part or all of the balance is past due."[18]

17. To recover on an open account, "the creditor must first prove the account by showing that it was kept in the course of business and by introducing supporting testimony regarding its accuracy."[19] The burden then "shifts to the debtor to prove the inaccuracy of the account or to prove that the debtor is entitled to certain credits."[20]

18. "An open account necessarily involves an underlying agreement between the parties on which the debt is based."[21]

19. 24/7's claim under the open account statute fails because there was no meeting of the minds sufficient to form an agreement and the Authorization is a nullity under Louisiana Law.[22]

20. 24/7's claim under the open account statute is dismissed. 24/7 cannot be awarded attorneys' fees under the open account statute.

**Unjust Enrichment**

---

[18] LA. REV. STAT. § 9:2781(D).
[19] Bisso & Miller, LLC v. Marsala, 215 So. 3d 469, 472 (La. App. 5 Cir. 2017); *see also* CACV of Colo., LLC v. Spiehler, 11 So. 3d 673, 675 (La. App. 3 Cir. 2009); Newman v. George, 968 So. 2d 220, 224 (La. App. 4 Cir. 2007).
[20] *Bisso & Miller*, 215 So. 3d at 472.
[21] Barges Unlimited Inc. v. Morgan City Stevedores, LLC, No. 2022-0691 (La. App. 1 Cir. Feb. 2, 2023).
[22] *Barges Unlimited, Inc.*, No. 2022-0691; *CCAPS, LLC*, 2023 WL 1965087.

21. Under Louisiana law, "[a] claim for unjust enrichment is based upon the equitable principle that a 'person who has been enriched without cause at the expense of another person is bound to compensate that person.'"[23]

22. To prove unjust enrichment, five elements must be present: (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and resulting impoverishment; (4) an absence of justification or cause for the enrichment and impoverishment; and (5) the lack of another remedy at law.[24]

23. The Court finds that Young has been enriched by the work performed at the Property, 24/7 was impoverished, there is a direct connection between the work performed at the Property and 24/7's impoverishment, there is no justification, and since the Court has declared the Authorization a nullity, there is no other remedy at law to adequately compensate 24/7 for the work it performed. Thus, Young is bound to compensate 24/7 for the work performed at the Property under principles of equity.

24. Louisiana Civil Code article 2033 provides that when the contract is found to be a nullity, the "parties must be restored to the situation that existed before the contract was made."

25. Under unjust enrichment principles, Louisiana Civil Code article 2298 provides that "[t]he amount of compensation due is measured by the extent to which one has been enriched or the other has been impoverished, whichever is less."

---

[23] Semco, LLC v. Grand Ltd., 221 So. 3d 1004, 1030 (La. App. 5 Cir. 2017) (quoting LA. CIV. CODE art. 2298).
[24] *Id.*

26. The Court finds the amount that 24/7 was impoverished to be indeterminable. 24/7 presented no evidence from which this Court would be able to determine its cost of labor or materials.

27. A court may not award speculative damages which have not been established with some degree of detail and specificity.[25] Considering 24/7's failure to provide any evidence of its expenses, the Court may not award damages in the amount 24/7 requests.[26]

28. Thus, the Court must measure compensation owed by the extent Young benefitted from the work done at the Property.

29. William Leahy, III testified as an expert in Insurance Adjusting. He explained that Xactimate is a software program used in the insurance industry to create and provide estimates to policyholders. Xactimate provides dynamic pricing based on geographic data, taking an average of what contractors are charging in a certain area to create an estimate of the cost of work.

30. The Court found his explanation of Xactimate credible.

31. Mr. Leahy testified that as an insurance adjuster, he would have estimated the value of the work at $21,746.34.

32. While the Court found Mr. Leahy's testimony useful and informative, this case is not an insurance dispute. As a result, the Court may not solely rely upon what Mr. Leahy testified an insurance estimator would have paid for the work performed.

---

[25] Smith v. First Nat'l Bank of DeRidder, 478 So. 2d 185 (La. App. 3 Cir. 1985) ("The courts are not entitled to award speculative damages which have not been established with some degree of specificity"); Smith v. White, 411 So. 2d 731 (La. App. 3 Cir. 1982), *writ denied*, 413 So. 2d 508 (La. 1982); Bieber-Guillory v. Aswell, 723 So. 2d 1145, 1151 (La. App. 3 Cir. 1998).
[26] 24/7 did not maintain any records of day laborers, time sheets, invoices, receipts, or records of materials purchased or utilized at the Property.

9

33. Mr. Leahy opined that the largest discrepancies between his estimate of the value of the work performed and 24/7's Scope of Work were (1) his classification of the water as Category One water, rather than Category Three water, (2) the individually priced bid items, and (3) the inclusion of additional overhead and profit.

*Classification of Water*

34. Mr. Leahy testified that, in the insurance industry, wind driven rain from hurricanes is not considered Category Three highly contaminated water. He explained that as the Property was affected by wind-driven rain from Hurricane Ida, the insurance industry would consider this type of water Category One water.

35. Mr. Leahy explained that to remediate Category One water, one must remove damaged items and then dry out the remaining building materials. Category Three water, contrastingly, additionally requires cleaning the stud walls and HEPA vacuuming, as well as personal protective equipment for employees.[27]

36. The Institute of Inspection, Cleaning and Restoration Certification ("IICRC"), a non-profit which has set standards for the industry, describes Category Three water as "grossly contaminated and can contain pathogenic, toxigenic, or other harmful agents and can cause significant adverse reactions to humans if contacted or consumed." The IICRC includes examples such as sewage, waste line backflows, seawater, rising water from rivers or streams, and wind-driven rain from hurricanes and tropical storms.

---

[27] There is no evidence PPE was used at the Property although it was originally charged in the Scope of Work and later removed.

37. Young testified he requested the studs be cleaned to ensure the home was safe for his future tenants, and thus he benefitted from the classification and treatment of the water as Category Three water.

*Bid Items*

38. Mr. Leahy testified that each of the bid items are not included in the Xactimate pricing system and were individually priced and added into the Scope of Work by 24/7.

39. The Court finds the addition of the bid items and the arbitrary pricing set by 24/7 to be unreasonable, and in many instances, duplicative.

*Overhead and Profit*

40. Mr. Leahy instructed the Court that overhead and profit is included within each individual line item in the Scope of Work. The Court found this testimony credible.

41. Based upon his explanation and testimony, the Court finds that additional overhead and profit to be duplicative.

42. Relying upon Mr. Leahy's testimony regarding the functions of the Xactimate software, the Court has also examined each line item of 24/7's Scope of Work and found the following line items to be unreasonable or duplicative: 1, 2, 3, 4, 5, 6, 13, 14, 15, 16, 109, 155, 174, 186, 214.[28]

43. The Court modified the time for which the remaining two dehumidifiers were used to reflect Mr. Leahy's testimony that that five days was adequate to dry the Property. The Court also modified the use

---

[28] The Court has attached a spreadsheet listing each line item with an explanation of why it was found to be unreasonable or duplicative.

11

of all air movers in the Scope of Work to reflect a five-day drying out period.

44. After eliminating the cost for the listed line items and modifying the time billed for dehumidifiers and air movers, it is determined Young was enriched in the amount of $35,909.26.

**Fraud**

45. Under Louisiana Civil Code Article 1953, "[f]raud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one part or to cause a loss or inconvenience to the other."

46. "To succeed on a claim for fraud under this Article, the plaintiff must prove: (1) a misrepresentation, suppression, or omission of true information; (2) the intent to obtain an unjust advantage or to cause damage or inconvenience to another; and (3) the error induced by a fraudulent act must relate to a circumstance substantially influencing the victim's consent to (a cause of) the contract."[29]

47. Although "[f]raud ... cannot be predicated on unfulfilled promises or statements as to future events," "[f]raud may be predicated on promises made with the intention not to perform at the time the promise is made."[30] "It is this present intention [not to perform] that avoids turning every breach of contract into a fraud claim."[31]

---

[29] Express Lien, Inc. v. Handle, Inc., No. CV 19-10156, 2021 WL 2537032, at *2 (E.D. La. June 21, 2021).
[30] Sun Drilling Prod. Corp. v. Rayborn, 798 So. 2d 1141, 1153 (La. App. 4 Cir. 2001), *writ denied*, 807 So. 2d 840 (La. 2002).
[31] Keenan v. Donaldson, Lufkin & Jenrette, Inc., 575 F.3d 483, 490 (5th Cir. 2009) (citing Automatic Coin Enters. v. Vend–Tronics, Inc., 433 So. 2d 766, 767–68 (La. App. 5 Cir. 1983) (emphasis added)).

12

48. The Court finds that 24/7 did not misrepresent, suppress, or omit true information and had no intention to not perform. As such, 24/7 did not commit fraud under La. Civ. Code art. 1953.
49. Young's counterclaim for fraud is dismissed.

**Louisiana Unfair Trade Practices Act**

50. A LUTPA claim must be brought within one year of the time of the transaction or act which gave rise to this right of action.[32]
51. Young asserts 24/7 billing practices are unfair. The work was performed at the Property and the Xactimate Scope of Work received by Young in October 2021. Young filed his counterclaim in December of 2022.
52. As Young filed his counterclaim over one year after the alleged transaction or act giving rise to his LUTPA claim, the claim is prescribed and Young's counterclaim for a violation of LUTPA is dismissed. Young may not be awarded attorneys' fees under the LUTPA.
53. The Court finds that Young's counterclaim under LUTPA, however, was not brought in bad faith. Thus, 24/7 may not be awarded attorneys' fees for defending against Young's LUTPA claim.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Plaintiff's claims for breach of contract and suit on an open account are **DISMISSED WITH PREJUDICE.** Defendant's claims for fraud and a violation of the LUTPA

---

[32] LA. REV. STAT. § 51:1409(E).

are also **DISMISSED WITH PREJUDICE.** Plaintiff is entitled to a judgment in the amount of $35,909.26 on its unjust enrichment claim.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Reconsideration (Doc. 42) is **DENIED** as moot.

New Orleans, Louisiana this 31st day of July, 2023.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

| | Items Eliminated From the Scope of Work | | |
|---|---|---|---|
| Line Item | Description | Total Deducted | Explanation |
| 1 | Emergency Service call - during business hours | $ 205.34 | There is no evidence that this call was an emergency. |
| 2 | Equipment setup, take down, and monitoring (hourly charge) | $ 1,008.14 | The line items in Xactimate anticipate this cost. |
| 3 | Equip. setup, taken down & monitoring - after hours | $ 1,081.20 | The line items in Xactimate anticipate this cost. |
| 4 | Water Extraction & Remediation Technician - per hour | $ 360.05 | Mr. Leahy testified that this work is built into their job, and that this is the cost of doing business. |
| 5 | Water Extraction & Remediation (Bid Item) | $ 750.00 | Mr. Leahy testified that this work is built into their job, and that this is the cost of doing business. |
| 6 | Termal imagine (Bid Item) | $ 350.00 | Mr. Leahy testified that this work is built into their job, and that this is the cost of doing business. |
| 13 | Neg. air fan/Air scrub - Large | $ 1,150.00 | Mr. Leahy testified this charge was extraneous. 24/7 presented no evidence to the contrary. |
| 14 | Add for HEPA filter (for negative air exhaust fan) | $ 191.01 | Mr. Leahy testified this charge was extraneous. 24/7 presented no evidence to the contrary. |
| 15 | Add for HEPA filter (for cainster/backpack vacuums) | $ 138.02 | Duplicative. The cost of the filter is reflected in various line items charging for the use of the vaccum. |
| 16 | Equipment decontamination charge - per piece of equipment | $ 737.28 | The line items in Xactimate anticipate this cost. |
| 109 | Dehumidifier (per 24 hour period) large - no monitoring | $ 1,365.00 | The Court found credible Mr. Leahy's testimony explaining a house of this size only required two humidifiers. Additional dehumidifiers are duplicative. |
| 155 | Door knob/lockset - Detach | $ 11.53 | Based on the testimony heard at trial, the Court finds that 24/7 did not remove a doorknob from a door which it removed. |
| 174 | Dehumidifier (per 24 hour period) large - no monitoring | $ 1,365.00 | The Court found credible Mr. Leahy's testimony explaining a house of this size only required two humidifiers. Additional dehumidifiers are duplicative. |
| 186 | Door knob/lockset - Detach | $ 23.06 | Based on the testimony heard at trial, the Court finds that 24/7 did not remove a doorknob from a door which it removed. |
| 214 | Door knob/lockset - Detach | $ 23.06 | Based on the testimony heard at trial, the Court finds that 24/7 did not remove a doorknob from a door which it removed. |
| | Overhead | $ 4,792.69 | Overhead and profit are included in each the cost of each Xactimate line item. |
| | Profit | $ 4,792.69 | Overhead and profit are included in each the cost of each Xactimate line item. |
| | Items Modified in the Scope of Work | | |
| Line Item | Description | Total Deducted | Explanation |

| | | | |
|---|---|---|---|
| 43 | Air mover - no monitoring | $ 378.00 | The Scope of Work provided for 8 days. The Court reduced the cost to reflect a use of 5 days based on Mr. Leahy's testimony. |
| 77 | Air mover - no monitoring | $ 283.50 | The Scope of Work provided for 8 days. The Court reduced the cost to reflect a use of 5 days based on Mr. Leahy's testimony. |
| 110 | Air mover - no monitoring | $ 283.50 | The Scope of Work provided for 8 days. The Court reduced the cost to reflect a use of 5 days based on Mr. Leahy's testimony. |
| 175 | Air mover - no monitoring | $ 378.00 | The Scope of Work provided for 8 days. The Court reduced the cost to reflect a use of 5 days based on Mr. Leahy's testimony. |
| 42 | Dehumidifier (per 24 hour period) Xlarge | $ 1,057.50 | The Scope of Work provided for 14 days. The Court reduced the cost to reflect a use of 5 days based on Mr. Leahy's testimony. |
| 76 | Dehumidifier (per 24 hour period) large - no monitoring | $ 877.50 | The Scope of Work provided for 14 days. The Court reduced the cost to reflect a use of 5 days based on Mr. Leahy's testimony. |
| | Total Amount Deducted | **$ 21,602.07** | |
| | | | |
| | Original Total in Scope of Work | $ 57,511.33 | |
| | Amount to be Awarded | $ 35,909.26 | |